Monmouth County Court of Common Pleas.

MARGARET OSBORNE, PETITIONER-APPELLEE, v. BOROUGH OF BELMAR, RESPONDENT-APPELLANT.

Decided January 19, 1943.

For the petitioner-appellee, *Anschelewitz & Barr*.

For the respondent-appellant, *Durand, Ivins & Carton*.

Giordano, C. P. J. The subject of this appeal arises out of the Employers' Liability Act. Plaintiff's decedent died under circumstances hereafter related while at his place of employment on July 6th, 1940. The Workmen's Compensation Bureau determined that the petitioner-appellee had carried the burden of proof and held that Newell S. Osborne, the deceased, died as a result of an accident arising out of and in the course of his employment and that death was caused by coronary thrombosis, precipitated by the activities of his employment on that date.

The decedent was employed by the Borough of Belmar as superintendent of streets and had so been employed for five years prior to his death. He was 47 years of age at the time of his death. The testimony discloses that he regularly performed all of the duties required of him during this period without any loss of time or any outward physical manifestation of incapacity. It is uncontradicted that the decedent had previously suffered from a cardiac condition that required periodic consultation with physicians up until approximately the year 1936. Between the year 1936, when he last con-

sulted a doctor with respect to his condition, and July 6th, 1940, the date of his death, he demonstrated no outward indication or symptom of that ailment in any manner and was not impeded in the regular performance of his work.

On the morning of July 6th, 1940, he left his home in apparent good health and reported for work as usual. After assigning the various men under his control to their respective tasks, he proceeded to the Yacht Basin on K Street, in Belmar. There he mounted a Case tractor which was operated from a seat and by means of a steering wheel in the same manner as an automobile. To the rear of the tractor was attached a "scoop" or "scraper" by means of which the washed-up sand was to be conveyed from the upper portion of the beach and road to the lower part of the beach, in order to cover up the mud at the water line and thus permit the same to be used for bathing.

The decedent was in the act of demonstrating to his men, who were already on the job, the manner in which the tractor was to be operated, and drove it for some period of time over and across the sandy beach. The witnesses produced disclosed that he made some four or five trips, causing the tractor to be turned in the soft sand twice during each trip. The proofs further show that just prior to his death he had been seen driving the tractor on the hard surfaces of streets or roads, but that this was the first time that the decedent was observed operating this vehicle in soft sand. After he had completed making one of these turns and as the tractor was proceeding toward the opposite point, the decedent was seen to slump from his seat and fall over the left side of the tractor to the ground. The men ran to his assistance and shut off the motor of the tractor. The first witness who reached the decedent found him speechless and according to his testimony he was breathing hard and he started to turn blue. Artificial respiration was attempted by some of the men and a physician was summoned who arrived some five or ten minutes later. Dr. Hancock was the physician and he testified that the decedent appeared to be dead; however, he injected adrenalin into decedent's heart and the first aid squad gave him extended artificial respiration. At 9:15 A. M., on the morning of July

6th, 1940, the decedent was pronounced dead by the doctor and the death certificate indicated the cause of death as "probable cardiac insufficiency." Dr. Hancock further testified that when he first reached the decedent, whom he knew, he was lying on his back, apparently dead. His face was ecchymotic and discolored and cyanosis was prominent around and about his lips. The pupils of his eyes were dilated and respiratory motion was absent, and that in his opinion death was due to coronary thrombosis.

The witnesses who were present and observed the demonstration that the decedent was performing testified that a considerable amount of physical effort was required to turn the wheels of the tractor in the soft sand.

In addition to the four witnesses who were present, the petitioner-appellee produced Dr. Hancock, to whom I have already referred, and Dr. R. A. Leighton, who testified that at intervals up until the year 1935, the decedent had consulted him with respect to a rheumatic heart condition.

Dr. Irving Applebaum, a specialist in diseases of the chest and heart, whose qualifications were not disputed, testified in response to a hypothetical question, unobjected to by respondent, that it was his opinion that the decedent's death, in all probability, was due to coronary thrombosis, which was precipitated by the effort involved in the operation of the tractor on the morning in question and that the thrombosis was superimposed upon a previous cardiac condition. It was his opinion, and he so testified, that there was a causal relationship between the effort required by the work and the ensuing death.

To overcome this testimony the respondent-appellant produced Dr. Leon Lewis and Dr. Asher Yaguda, who in answer to hypothetical questions directed to them, gave as their opinions that there was no relationship between the death of the decedent and his work that morning.

That there was a pre-disposing physical condition remains unchallenged.

Upon the facts here stated I think that the holding of the Court of Errors and Appeals in *Hentz* v. *Janssen Dairy Co.,* 122 *N. J. L.* 494; 6 *Atl. Rep.* (*2d*) 409, is controlling. "As

for an accident in the sense used in the earlier days, there was none; but it appears to be the effect of our more recent decisions that where the performance of manual labor entails a strain upon the heart without which death would not have occurred but in consequence of which, combined with causes disassociated with the employment, death does occur the experience constitutes an accident within the meaning of the Employers' Liability Act, and that when the contributory strain arises out of and in the course of the employment the accident likewise so arises."

Our Court of Errors and Appeals has held that "* * * the requirement that the injury or death arise by accident, under our statute, is satisfied if the claimant discharges the burden of proving that the condition complained of, *i. e.,* the injury or death, is related to or affected by the employment, that is to say, if but for the employment it would not have occurred." *Bollinger* v. *Wagaraw Building Supply Co.,* 122 *N. J. L.* 512, 520; 6 *Atl. Rep.* (*2d*) 396; *Ciocca* v. *National Sugar Refining Co.,* 124 *N. J. L.* 329, 334; 12 *Atl. Rep.* (*2d*) 130. In the English case of *James* v. *Partridge Jones et al.,* 6 *A. C.* 501; 26 *Butterworth's Workmen's Compensation Cases* 277, at least twice cited with approval by our Court of Errors and Appeals; *Hentz* v. *Janssen Dairy Corp., supra; Bollinger* v. *Wagaraw Building Supply Co., supra,* accident was determined upon these statements of pertinent principles:

"I do not think we should attach any importance to the fact that there was no strain or exertion out of the ordinary. * * * Nor do I think we should attach any importance to the fact that this man's health was as described. * * * An accident arises out of the employment when the required exertion producing the accident is too great for the man undertaking the work, whatever the degree of exertion or the condition of health. * * * The real question, as it seems to me, is this: Did it (this death) arise out of his employment?"

The proofs, as I have stated, indicate that the decedent was employed as superintendent of streets and that his work was of a supervisory nature, but on the morning in question,

in line with his duties, he was demonstrating by operating a tractor the manner in which he desired the particular job to be done. The death, in my opinion, was caused by a strain arising out of the work he was doing at that time. The operation of the tractor may not have been heavy work under ordinary circumstances, but it was too heavy for the deceased.

I am satisfied that but for the employment the death would not have occurred when it did. That, under the statement of principle quoted above, constitutes a statutory accident. The effort would not have been undue if the man had been in health but it was excessive for the weakened member.

The respondent-appellant contends that the petitioner-appellee did not carry her burden of proof, and that the proof is not at all certain as to the exact cause of decedent's death. In making an analysis of the proof, the question is: did the respondent-appellant introduce evidence of sufficient weight to overcome the proofs of the petitioner-appellee and the inferences to be drawn therefrom, from which it could be said under all of the attending circumstances that the decedent did not die as a result of coronary thrombosis, which was contracted while in the performance of his duties in the course of his employment? I think not.

In light of all that has been said, I, therefore, hold that the petitioner-appellee has established, by the preponderance of probabilities, that death ensued from coronary thrombosis while in the course of his employment.

Accordingly, the judgment of the court below is sustained, and the petitioner-appellee, as surviving widow of Newell S. Osborne, is entitled to compensation under the Workmen's Compensation Law of New Jersey.